FERGUS v CHRYSLER CORPORATION (AFTER REMAND)

1. WORKMEN'S COMPENSATION—APPEAL BOARD—LIMITED REVIEW—
   FINDINGS OF FACT.

   Appellate court review of Workmen's Compensation Appeal
   Board decisions is limited to reviewing the record for errors of
   law; findings of fact by the board are conclusive in the absence
   of fraud and board decisions will be set aside only when they
   are contrary to law or not supported by competent, material
   and substantial evidence (Const 1963, art 6, § 28; MCLA
   418.861; MSA 17.237[861]).

2. WORKMEN'S COMPENSATION—APPEAL BOARD—BURDEN OF PROOF—
   TRIER OF FACT—WEIGHT AND CREDIBILITY OF TESTIMONY.

   A plaintiff in workmen's compensation proceedings always bears
   the burden of showing compensability and a plaintiff's undis-
   puted testimony does not automatically meet this burden since
   the Workmen's Compensation Appeal Board, as trier of fact,
   has wide discretion in ascribing weight and credibility to the
   testimony presented and in drawing reasonable inferences from
   such testimony.

3. WORKMEN'S COMPENSATION—APPEAL BOARD—WEIGHT OF TESTI-
   MONY—CREDIBILITY OF WITNESS—EXPERT WITNESS.

   The Workmen's Compensation Appeal Board is within its power
   in ascribing little weight to a plaintiff's testimony where the
   plaintiff is found to be a credible witness but his testimony is
   stale and lacking in significant corroboration; the board is not
   obliged to accept or extend verity to any expert opinion.

4. WORKMEN'S COMPENSATION—APPEAL BOARD—LIMITED REVIEW—
   HEART DISEASE—TRIER OF FACT.

   Appellate courts are constrained by their limited scope of review

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 58 Am Jur, Workmen's Compensation § 522 et seq.
[2] 58 Am Jur, Workmen's Compensation § 536.
[3] 58 Am Jur, Workmen's Compensation § 532.

to defer to the Workmen's Compensation Appeal Board's own expertise in the area of the compensability of heart disease and to the board's role as fact finder.

Appeal from the Workmen's Compensation Appeal Board. Submitted November 12, 1975, at Detroit. (Docket No. 21922.) Decided January 27, 1976. Leave to appeal applied for.

Claim by James Fergus against Chrysler Corporation for workmen's compensation. Benefits denied by Workmen's Compensation Appeal Board. Plaintiff appealed. Affirmed, 45 Mich App 196 (1973). Plaintiff appealed to Supreme Court. Remanded to Workmen's Compensation Appeal Board, 389 Mich 811 (1973). Benefits denied on remand. Plaintiff appeals. Affirmed.

*Levine & Benjamin, P. C.,* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross*), for defendant.

Before: Danhof, P. J., and McGREGOR and N. J. KAUFMAN, JJ.

### AFTER REMAND

PER CURIAM. This is the latest (and, hopefully, the last) proceeding in plaintiff's appeal of a December 29, 1971 order of the Workmen's Compensation Appeal Board (WCAB). The order affirmed a hearing referee's decision which denied plaintiff's claim for benefits. Over a dissent by now Justice LEVIN, this Court affirmed the order, *Fergus v Chrysler Corporation,* 45 Mich App 196; 206 NW2d 521 (1973), but the Supreme Court remanded the case to the WCAB pursuant to Justice LEVIN's dissent, 389 Mich 811 (1973). This Court, however, found that the WCAB had failed to fulfill the dictates of the Supreme Court order and remanded the subsequent WCAB opinion in a May 17, 1974 order. The result of this remand is before us today.

This case involves a question as to the compens-

ability of a heart attack, an issue which Professor Arthur Larson deems "probably the most prolific and troublesome problem in workmen's compensation law". Larson, *The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution,* 65 Mich L Rev 441 (1967). The problem here is compounded by the limited amount of evidence introduced at the original hearing. Plaintiff, then 70 years old, testified that he had been forced to retire from his job with defendant in 1963 because of a heart attack incurred in March of that year. He stated that he had suffered other heart attacks in 1955, 1959 and December, 1962. Each time, he was hospitalized.

The last attack occurred five days after he returned to work following a recuperation period from the December, 1962 attack. Upon returning, plaintiff found that his work was "rough all week" and that difficulties caused pressure to build up on him. Plaintiff worked as a draw die man. He was charged with keeping the production moving smoothly. He observed the steel to keep it from getting "out of tolerance" and splitting. When this happened, he had to run around the die-making machine and stop its operation. Plaintiff stated that when the machine stopped and work backed up, his "bosses" would be "right on [his] neck". Breakdowns occurred frequently that week. The resultant pressures, he felt, caused his heart attack. On cross-examination, plaintiff stated that, during his 1962 hospitalization, he was diagnosed as having diabetes and was taking medication for it.

Plaintiff also introduced a letter from a Dr. John Mucasey. The letter stated that Dr. Mucasey examined plaintiff in August, 1969. It recited a history of plaintiff's heart trouble and diabetes. In conclusion, Dr. Mucasey stated:

"[Plaintiff] gives clear indication of having exceeded his functional cardiovascular capacity in the final years of his employment by the repeated episodes of angina and dyspnea, and in this way further served to put serious stress on his already seriously impaired cardiovascular system."

Defendant's evidence consisted largely of a letter by a Dr. Ernest Hershey who, having examined plaintiff, concluded:

"In summary, this man has evidence of heart disease as indicated by his history and electrocardiographic changes. He is a diabetic and the appropriate diagnosis would be arteriosclerotic heart disease with angina pectoris associated with the diabetes. As far as his lungs are concerned, there is nothing by his history, physical examination, chest X-ray study or pulmonary function testing to indicate significant or symptomatic pathology of his lungs, industrially related or otherwise. Copies of the pulmonary function testing curve obtained at the time of this examination are enclosed with this report."

The hearing referee decided that plaintiff's injury did not arise out of and in the course of his employment. The WCAB affirmed the referee. Pursuant to the latest remand, the WCAB stated in its specific findings:

"In Opinion No. 19415 [order of May 17, 1974] regarding the above entitled cause, a divided Court of Appeals determined that this Board (1974 WCABO #37) failed to follow the Supreme Court order of remand, 389 Mich 811, and remanded the matter to the Workmen's Compensation Appeal Board for further consideration.

"In interpreting the Supreme Court order, we find four (4) points that we must address to our Board:

"1. Whether the testimony of plaintiff, James Fergus, is credible;

"2. If not, why not?;

"3. Whether his disability is job-related;

"4. Whether the exertion is at least a contributing cause of the injury. The following definitive answers to the four (4) questions are as follows:

"1. Yes;

"2. —

"3. No;

"4. We have applied the *Zaremba Zaremba v Chrysler Corp,* 377 Mich 226 [139 NW2d 745 (1966)], test and find the record insufficient to meet said test.

"Our conclusion as to question #4 has been formed to a great extent by the fact six (6) years elapsed between the last day of work and the date application for hearing was filed, making plaintiff's testimony stale in nature.

"Further, plaintiff alleges in his application stress from management and fellow employees. The only positive testimony in this regard comes from the plaintiff who testified twice in the record that management breathed down his back. No testimony can be found buttressing a finding of stress from fellow employees.

"Plaintiff in his application further alleged strain from the job, based on rushing from one end of the machine to another while pushing a truck. Further, the record indicates that plaintiff's job involved only button pushing to get the tolerances in line.

"In reviewing this testimony, we consider *Zaremba* (supra) and incorporate the analysis of this factual situation vis-a-vis the *Zaremba* authority made by Chairman Gillman in his concurring Opinion subsequent to the Supreme Court remand:

" 'Finally, what are the Board's findings on job relationship? We have the report of Dr. Mucasey, postulating such relationship, based on an examination six years after plaintiff last worked and 15 years after the heart condition began. We have the report of Dr. Hershey, which does not speak of causality, but does diagnose "arteriosclerotic heart disease with angina pectoria associated with the diabetes." We also have plaintiff's age at the last date he worked (64) and his admitted long history of heart problem. We also have his testimony as to the nature of his work, and his further testimony that he did not think of compensation for

any work-relationship to his heart disease until several years after leaving work.

" 'We superimpose on this matrix of evidence the Board's right to draw reasonable inferences from the proofs before us *(Forner v American Box Board Co,* * * * [319 Mich 165; 29 NW2d 273 (1947)]).

" 'We are aware of the Court's directives not to impose any improper legal tests as to the necessity of a specific injury or certain degree of stress before a finding of work injury can be made *(Sheppard v Michigan National Bank,* 348 Mich 577 [83 NW2d 614 (1957)]; and *Zaremba v Chrysler Corp,* 377 Mich 226 [139 NW2d 745 (1966)]). However, these authorities do not detract from this Board's constitutional authority to fact-find that injuries have (or have not) occurred as the result of work, no matter how slight or great the effort. Therefore, based on the above combination of testimony and reports, we reaffirm the fact-finding of the Referee and this Board that no compensable injury occurred.' "

Findings of fact by the WCAB are conclusive in the absence of fraud, Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861). Decisions of the appeal board will be set aside only when they are contrary to law or not supported by competent, material and substantial evidence on the whole record. *Tillotson v Penn-Dixie Cement Corp,* 47 Mich App 427; 209 NW2d 611 (1973), *lv den* 390 Mich 767 (1973). Our powers of review are, thus, limited to reviewing the record for errors of law. On appeal, plaintiff relies on the case of *White v Revere Copper & Brass, Inc,* 383 Mich 457; 175 NW2d 774 (1970), specifically to that portion of *White* which provides:

"Although the appeal board could have expressly rejected plaintiff's testimony * * * , it could not properly deduce from the only evidence in the record that no notice was given. * * * The appeal board cannot

draw inferences contrary to undisputed evidence." *Id.* at 462–463. (Citations omitted.)

Plaintiff argues that his testimony was the "only evidence in the record," that it was undisputed and that the WCAB's ruling represented an inference contrary to this evidence.

We disagree. Plaintiff's application of the above-quoted language misapprehends relevant law and is not consistent with the instant facts. First, plaintiff's testimony was not undisputed. Defendant presented a medical opinion by a doctor who had examined plaintiff and concluded that his injury was not work-related.

Even if plaintiff's testimony had been undisputed, he could not, therefore, be entitled to compensation. In compensation proceedings, the plaintiff always bears the burden of showing compensability. *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966), *Trobaugh v Chrysler Corp,* 38 Mich App 758; 197 NW2d 183 (1972). As trier of fact, the board has wide discretion in ascribing weight and credibility to the testimony presented and in drawing reasonable inferences from such testimony. *Coates v Continental Motors Corp,* 373 Mich 461; 130 NW2d 34 (1964), *Lane v Jones,* 5 Mich App 525; 147 NW2d 420 (1967), *lv den* 379 Mich 756 (1967). The WCAB need not have found plaintiff's testimony credible. The board may find the testimony credible but ascribe little weight to it. Nor is the board obliged to accept or extend verity to any expert opinion. *Koschay v Barnett Pontiac, Inc,* 386 Mich 223; 191 NW2d 334 (1971).

In the instant case, the WCAB found that plaintiff was a credible witness, that he was not lying. However, because plaintiff presented no evidence to corroborate his testimony and because the board

deemed his testimony "stale", it ascribed little weight to plaintiff's testimony. In doing so, the board was within its powers. Further, plaintiff's own doctor's report did not provide significant corroboration. It reported plaintiff's long history of heart disease but, while opining that plaintiff's work had put stress on his weakened cardiovascular system, the doctor's report did not make a conclusion as to causality or rule out the possibility that plaintiff's injury was caused by diabetes.

We find this case much like *Koschay v Barnett Pontiac, Inc, supra,* and *Grammas v Donut Systems, Inc,* 52 Mich App 472; 217 NW2d 423 (1974), *lv den* 391 Mich 842 (1974), cases also involving heart disease. In both cases, little evidence was presented. In both, varying inferences could be drawn from the evidence. In both, the appellate courts deferred to the WCAB's own expertise in the area of the compensability of heart disease and to its role as fact finder. On the record before us, we are constrained by our limited scope of review to do likewise.

Affirmed. Costs to defendant.