TEDDY v DEPARTMENT OF STATE POLICE

Docket No. 44749. Submitted October 7, 1980, at Detroit.—Decided December 15, 1980.

Harold D. Teddy, a lieutenant in the Michigan Department of State Police, died as a result of a myocardial infarction which resulted from his arteriosclerotic heart disease. Bertha A. Teddy received a retirement pension from the state police pension plan pursuant to the provisions of that pension plan. Mrs. Teddy sought, in the name of her deceased husband, workers' disability compensation benefits, alleging that the deceased's heart disease resulted from the stress of his job with the Department of State Police. The Department of State Police and the Michigan State Accident Fund argued that the deceased's heart disease was not work related and workers' disability compensation benefits were not payable by reason of the payment of the pension benefits. The administrative law judge determined that the heart attack suffered by the deceased was compensable. The Worker's Compensation Appeal Board affirmed the award of benefits. The Michigan Department of State Police appeals. *Held:*

1. Since the determination that there was a compensable injury was supported by competent evidence and the Worker's Compensation Appeal Board applied the correct legal standard, the Court of Appeals will not disturb on appeal the findings of fact made by the Appeal Board. Neither will those findings be overturned because of the admission by the Appeal Board of hearsay evidence, since the Appeal Board did not consider the disputed testimony in rendering its decision.

2. The retirement pension benefits received by Mrs. Teddy

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 797.

82 Am Jur 2d, Workmen's Compensation § 633.

Consideration in determining facts, of inadmissible hearsay evidence introduced without objection. 79 ALR2d 890.

[2] 82 Am Jur 2d, Workmen's Compensation § 552.

[3] 60 Am Jur 2d, Pensions and Retirement Funds § 56.

82 Am Jur 2d, Workmen's Compensation § 364.

[4] 82 Am Jur 2d, Workmen's Compensation § 630.

are not "like benefits" within the meaning of the Worker's Disability Compensation Act provision requiring an election of benefits by policemen or firemen or their dependents where like benefits are provided. Accordingly, Mrs. Teddy did not have to elect to take either the pension benefits or the disability compensation benefits, providing the total of those two benefits did not exceed the statutorily mandated maximum of the average annual salary earned by her husband during the two years immediately preceding his death. Since the defendants failed to raise below the question of whether the total benefits payable exceeded the average annual salary of the deceased, they will not be permitted to raise that issue on appeal.

Affirmed.

1. WORKERS' COMPENSATION — EVIDENCE — HEARSAY EVIDENCE.

Reversal of a determination by the Worker's Compensation Appeal Board is not mandated by reason of the admission of hearsay testimony where the Appeal Board did not consider the disputed testimony in rendering its decision.

2. WORKERS' COMPENSATION — FINDINGS OF FACT — APPEAL — STATUTES.

The findings of fact of the Worker's Compensation Appeal Board will not be disturbed on appeal where those findings are supported by competent evidence and the Appeal Board applied the correct legal standard (MCL 418.861; MSA 17.237[861]).

3. WORKERS' COMPENSATION — STATE POLICE RETIREMENT PENSIONS — LIKE BENEFITS — STATUTES.

A surviving spouse of a state police officer who is entitled to receive payment under the state police pension plan is not prohibited from receiving both a state police retirement pension and workers' disability compensation benefits providing that the amount payable under the retirement pension, when added to the amount payable under the Worker's Disability Compensation Act, does not exceed the average annual salary paid to the state police officer in the two years immediately prior to the officer's death; the pension benefits and the disability compensation benefits are not "like benefits" within the meaning of the Worker's Disability Compensation Act (MCL 28.107, 418.161[1][a]; MSA 3.337, 17.237[161][1][a]).

4. WORKERS' COMPENSATION — APPEAL — PRESERVATION OF ISSUE.

Issues relative to entitlement of workers' disability compensation benefits which are not raised before either the administrative

law judge or the Worker's Compensation Appeal Board are generally not reviewable by the Court of Appeals.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh)*, for plaintiff.

*Anderson, Green & Vincent, P.C.* (by *Adrian R. Vincent)*, for Department of State Police.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and MacKENZIE, JJ.

N. J. KAUFMAN, J. Defendant Michigan Department of State Police appeals from a unanimous opinion and order of the Worker's Compensation Appeal Board which affirmed the award of compensation benefits to plaintiff, Bertha A. Teddy, the widow of Harold D. Teddy, who had been a lieutenant in the Michigan Department of State Police.

This case involves a fatal heart attack. Proceedings were initiated by plaintiff in a petition for hearing filed September 10, 1975, which alleged, *inter alia,* that the injury resulting in the death of her husband occurred at State Police Headquarters in East Lansing and that:

"On April 7, 1975 the employee while at work suffered a myrocardial infarction *[sic]*/acute resulting from his employment. The employee died on May 29, 1975 as a result of the myrocardial infarction *[sic]."*

A hearing was held before an administrative law judge who, on June 28, 1976, found that plaintiff's husband's fatal heart attack, as well as a previously suffered heart attack, was compensable within the meaning of the Worker's Disability Compensation Act. This decision awarded benefits pursuant to that act.

Defendants Michigan Department of State Police and the Michigan State Accident Fund appealed this decision to the Worker's Compensation Appeal Board (hereinafter WCAB). The WCAB conducted a *de novo* hearing at which extensive lay and medical testimony was presented. See *Herrala v Jones & Laughlin Steel Corp,* 43 Mich App 154; 203 NW2d 752 (1972). In unanimously affirming the award of compensation benefits the WCAB concluded:

"We find decedent worked from 1956 until April 7, 1975, in defendant's Personnel Division where he was assistant commanding officer. He worked long hours, including work at night. The workload was huge and continued to grow larger with no particular increase in staff. Decedent was confronted with multiple conflicting demands, unreasonable time pressures and hostilities and abuse from aggrieved employees in the department. As Captain Lenon put it, 'there is no good news in Personnel, most of it is adverse news or questions and problems.' Decedent, given his position, shouldered a considerable portion of the workload, troubles, and problems in Personnel.

"*Claim of work-related injury.*

"The applicable test is set forth in *Kostamo v Marquette Iron Mining Co,* 405 Mich 105 (1979):

" 'We know also that it is not possible to determine medically whether particular stress caused a particular injury. Nevertheless compensation may be awarded based on an assessment of the probabilities in light of the background factual circumstances and any opinion testimony.'

"We find that plaintiff sustained her burden of proving work-related injuries.

"Dr. Bates testified for defendant. His testimony reveals he did not understand the nature of decedent's job. He apparently decided that decedent possessed a kind of sinecure doing work consisting of serene, undemanding paper pushing. Captain Lenon's unrebutted testimony establishes just the opposite. Decedent

worked in a literal pressure cooker facing conflicting, unreasonable demands from all sides. In our judgment, Dr. Bates' viewpoint is substantially eroded by his lack of understanding of plaintiff's job. The hearing referee also noted Dr. Bates' unawareness of decedent's duties which the referee correctly characterized as a 'full range of rather awesome responsibilities.'

"Dr. Johnson described the many factors involved in the development of decedent's heart disease—one of them was the effect of emotional stresses upon the arteries which ultimately led to damage of the interior artery walls. Plaintiff's work, we find, relying upon Dr. Johnson's testimony, was *at least* one of the factors in the development of his arteriosclerotic heart disease. For such reason, his employment was also *at least* one factor in the actual heart attacks occurring on April 7 or 8 and May 29, 1975."

It is from this decision and from certain findings relating to the type and amount of pensions received by plaintiff and the amount of deceased's salary stipulated to by parties that defendant Department of State Police (hereinafter the term defendant shall refer to defendant Department of State Police) now appeals, by leave granted.

Defendant raises three issues, two of which were properly preserved for appeal. Defendant first alleges that the decision of the WCAB was not supported by competent, material and substantial evidence on the whole record. The first part of defendant's argument, which concerns alleged hearsay testimony, is without merit. The WCAB cured any possible error by not considering the disputed testimony in rendering its opinion.

The question which thus remains is whether there was any other evidence to support the decision of the WCAB. Defendant asserts that the testimony set forth by the WCAB does not establish a work-related compensable heart attack un-

der the standard adopted in *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 411 (1979). Defendant argues that the testimony relied on by the WCAB does not, as required by *Kostamo,* establish any job stress, work related acceleration or aggravation of diseases and infirmities, or stresses that may cause attacks including anxiety, anger, fear, exhilaration, fatigue or environmental hazards.

Plaintiff asserts that the WCAB properly relied upon and applied *Kostamo* and did all things necessary to present a reviewable opinion to this Court. See *Aquilina v General Motors Corp,* 403 Mich 206; 267 NW2d 923 (1978). We agree. The WCAB applied the correct legal standard in this case. This is evident from its citation of and quotation from *Kostamo, supra.* See the previously quoted portion of the WCAB's opinion. As required by *Kostamo,* the WCAB carefully assessed the probabilities in light of the factual background through an examination of both medical and lay testimony. It is also clear from the opinion which testimony was accepted and which was rejected by the WCAB.

It is for the WCAB, and not this Court, to act as the trier of fact, weighing the credibility of the evidence and drawing reasonable inferences from the facts established. While this Court may review questions of law, the findings of fact made by the WCAB where supported by competent evidence on the record may not be disturbed on appeal. *Carter v Kelsey-Hayes Co,* 386 Mich 610; 194 NW2d 326 (1972), MCL 418.861; MSA 17.237(861), Const 1963, art 6, § 28.

It is our opinion that the WCAB properly set forth the legal standard to be employed, the testimony adopted, and the path it followed through

the conflicting evidence in reaching its conclusion. There was ample evidence to support a causal nexus between the deceased's job and his heart attacks. The WCAB was definite in its conclusion that the employment was related to the injury. The evidence, both from the record of the hearing before the administrative law judge and from the independent hearing conducted by the WCAB, amply supports the WCAB's conclusion and, therefore, may not be disturbed on appeal.

The second issue raised by defendant on this appeal gives us greater pause. Defendant contends that the decision of the WCAB that plaintiff need not elect between workers' disability compensation benefits and pension benefits is inconsistent with the law as it applies to the facts of the instant case.

When defendant addressed this question to the WCAB, the WCAB concluded:

"Defendants argue that plaintiff must elect between worker's compensation and pension benefits, citing *Johnson v City of Muskegon,* 61 Mich App 121, 127 (1975). That case deals with pension benefits of a *city policeman.* That case and the statute, MCLA 418.161(1)(a), does not apply to the present case involving a *state police* officer and his dependents. *Further, there is a specific statute governing the pension rights of state police officers.* See MCLA 28.101 *et seq.*"[1] (Emphasis supplied.)

---

[1] MCL 28.101; MSA 3.331 provides as follows:

"There is hereby created and established a continuing fund to be known as the Michigan department of public safety pension, accident and disability fund. Such fund shall be made up from contributions from members of the Michigan department of public safety who have subscribed to the constitutional oath of office, from the rewards offered and accepted for such fund and from a yearly sum to be paid into such fund from the appropriation of the Michigan department of public safety in such an amount as shall be deemed sufficient by the commissioner of the Michigan department of public safety approved by the state administrative board to carry out the provisions of this act."

In support of its position, defendant cites *Schave v Dep't of State Police,* 58 Mich App 178; 227 NW2d 278 (1975), *lv den* 394 Mich 765 (1975). That case involved an interpretation of MCL 418.405(3); MSA 17.237(405)(3), which provides that as a condition precedent to filing an application for workers' compensation benefits a claimant must first make application for any pension benefits to which he might be entitled. If pension benefits are not awarded, then the presumption of injury, as provided in that section, would apply. *Schave* held that the purpose of this provision is to prevent double recovery of like benefits by an injured person by the receipt of both disability pension and workers' compensation benefits for the same disability.

Defendant also refers to MCL 418.161(1)(a); MSA 17.237(161)(1)(a), which provides in relevant part:

"Policemen or firemen or employees of the police and fire departments, or their dependents, in municipalities or villages of this state having charter provisions prescribing like benefits, may waive the provisions of this act and accept in lieu thereof such like benefits as are prescribed in the charter but shall not be entitled to like benefits from both."

Defendant contends that the above-quoted statutory language indicates that both compensation and pension benefits may not be received. In *Johnson v Muskegon,* 61 Mich App 121; 232 NW2d 325 (1975), where a city policeman received a disability pension and also sought workers' compensation benefits, this Court held that the employee could not have both workers' compensation and pension benefits for the same disability and that the administrative law judge must advise such employees that they must make an election between the

benefits under a disability pension and the workers' compensation act.

Although § 161(1)(a) speaks in terms of municipal and village policemen, defendant maintains that the rationale of the *Schave* case relative to the intent of § 405 mandates that the provisions of § 161(1)(a) apply equally to state police officers. Defendant's analysis is that the *Schave* interpretation of § 405, which would prevent double recovery by state police officers, is the same interpretation that has been applied to § 161(1)(a), which prevents double recovery by village and municipal police officers. Defendant further contends that an interpretation allowing a state police officer to recover both workers' compensation and pension benefits would constitute a violation of equal protection, by treating state officers differently from local and city police who must elect between the two types of benefits under § 161(1)(a).

What defendant overlooks, however, is that the statute and case law cited bar only the recovery of *like* pension and workers' compensation benefits for disability. Moreover, the language of § 7 of the public safety department pension fund act, MCL 28.107; MSA 3.337, which governs *state police pensions,* recognizes that *both* workers' compensation and pension benefits may be paid. MCL 28.107 provides in pertinent part:

"The pension payable either to the spouse or children shall not be more than an amount which, when added to statutory workmen's compensation benefits applicable in the case, exceeds the average annual salary paid to the member for the 2 years immediately prior to death."

To construe §§ 161(1)(a) and 405 as barring *any* recovery of both pension benefits and workers'

compensation benefits renders the language of MCL 28.107 a nullity. Courts, wherever possible, must give effect to statutory language so that the language is not rendered a nullity. *Lynes v St Joseph County Road Comm,* 29 Mich App 51; 185 NW2d 111 (1970). Whether the benefits are like benefits depends on whether the pension was a disability pension or a retirement pension. In its order granting leave, this Court requested further information regarding the pension. The parties prepared a stipulation in answer to this order, which was certified to this Court by the WCAB on February 12, 1980. Although the stipulation does not expressly state that the pension was either a retirement or disability pension, the documents attached to the stipulation, incorporated by reference, establish clearly that the pension was a retirement pension.[2]

---

[2] From the affidavit of Bertha Teddy, included in the stipulation:

"2. I am currently receiving a pension, because of my husband's service with the Department of State Police, from the State Police *Retirement* System." (Emphasis supplied.)

From an interoffice memo to Bertha Teddy as an "enlisted retiree":

"House Bill No. 4984 was signed into law by Governor William Milliken on January 4, 1979. Included in this bill is a supplement to the *retirement* allowance for those enlisted members or beneficiaries who *retired* before June 30, 1976 and who were on the rolls for July 1, 1978.

"Section 8c. (1) of the bill is repeated below:

"Section 8c. (1) The monthly *retirement* allowance payable to a *retirant or beneficiary* after September 30, 1976, who was on the rolls for July 1, 1978, is supplemented as follows: * * *." (Emphasis supplied.)

From an interoffice memo to Bertha Teddy regarding the tax status of the pension:

"Subject: Income Tax on *Retirement* Income

"The Lansing Office of the Internal Revenue Service advises:

"1. The pension income is taxable.

"2. If the pensioner recovers all monies paid into the pension fund within three years, the pensioner need pay no tax on the pension income until the entire amount paid in has been recovered.

"3. If all monies paid into the pension fund are not recovered within a three year period, an annuity plan, based on life expectancy, should be used when paying income tax. In this manner, the amount

Because receipt of a pension based on retirement and receipt of workers' compensation benefits for a work-related injury does not constitute double recovery, we hold that plaintiff is entitled to both.

Defendant attempts to raise a third issue on appeal. Defendant alleges that the pension and the compensation benefits received by plaintiff are in excess of the deceased's average annual salary for the two years immediately prior to his death and are, thus, statutorily prohibited. See MCL 28.107. This issue was not raised before either the administrative law judge or the WCAB. It is axiomatic that failure to present an issue to the WCAB will generally preclude review of such issue by this Court. *Cotton v Campbell, Wyant & Cannon Foundry,* 57 Mich App 52; 225 NW2d 187 (1974), *Norton Shores v Carr,* 81 Mich App 715; 265 NW2d 802 (1978), *lv den* 403 Mich 812 (1978).

Let us merely note that, in support of its contention, defendant has manipulated the figures to improperly reach the conclusion that the amount received in benefits is greater than the amount Lieutenant Teddy would have received in salary.[3]

paid in would be prorated over the number of years of life expectancy remaining to the pensioner; for example, a person who had paid $20,000 into the pension plan and was expected to live 20 years, after retirement, could deduct $1,000 per year for 20 years.

"4. These same provisions also apply to the widow of an officer killed in line of duty, or dying of natural causes *after completing sufficient years of service to qualify the widow for a pension."* (Emphasis supplied.)

From a letter to Bertha Teddy, explaining the benefits due her upon her husband's death:

*"As Harold was employed 10-9-50 and completed 24 years, 7 months and 20 days of service as an enlisted officer, you will be entitled to a monthly pension* from the Michigan State Police Pension, Accident and Disability Fund. Your death would terminate the pension unless there are children under the age of 18 years that would survive you. The Business Administration Division Accounting Unit will soon furnish a copy of the *retirement computation* for your information, as well as the *amount of contributions made to the pension fund* by Harold through 6-30-74." (Emphasis supplied.)

[3] The stipulation of the parties, as certified by the WCAB, provides:

Thus, even if we were to reach this issue, it would not alter our disposition of this case.

Affirmed. No costs, a statutory interpretation and a public question being involved.

---

"The amount of the pension received by Lieutenant Teddy's widow, Bertha Teddy, from the Michigan Department of Public Safety Pension, Accident & Disability Fund is as follows:

"Effective June 1, 1975: $934.56 per month

"Effective October 1, 1976: $953.25 per month

"Effective October 1, 1977: $972.32 per month

"Lieutenant Teddy's average annual salary for the two years prior to his death was $22,809.40."

It is agreed that Mrs. Teddy's workers' compensation benefits are $118 per week. $118 times 52 weeks equals $6,136. Assuming the highest amount paid in pension, $972.32 per month, the yearly pension benefits would be equal to $11,667.84. The sum of the two is $17,803.84, far below the average annual salary of $22,809.40. For some reason, the defendant reduced the annual salaries for 1973 and 1974 by the tax withheld from Harold Teddy's checks during those years (which does not represent either the stipulated average annual salary, nor an actual amount of tax paid for the year) in figuring an "actual net salary". Defendant next reduces the pension by applicable taxes, adds this amount to the workers' compensation benefits, and determines that the sum total exceeds the actual net salary. The statute does not make provision for taxes, but rather speaks in terms of "the average annual salary paid".